Priority ✓
Send ✓
Enter ___
Closed ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only___



FILED
CLERK, U S DISTRICT COURT

DEC 15 2004

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| COMITE DE JORNALEROS DE REDONDO BEACH, an unincorporated association; NATIONAL DAY LABORER ORGANIZING NETWORK, an unincorporated organization,<br><br>                    Plaintiffs,<br><br>vs.<br><br>CITY OF REDONDO BEACH<br><br>                    Defendant. | No.  CV04-9396 CBM (PJWx)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |



DOCKETED ON CM

DEC 15 2004

BY _____ 009

The matter before the Court is the Order to Show Cause Re Preliminary Injunction, which was issued on December 6, 2004.  On December 13, 2004, Counsel for the parties appeared before the Court, the Honorable Consuelo B. Marshall, Chief Judge, presiding.  Upon consideration of the papers submitted, the Court GRANTS the Preliminary Injunction.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 28 U.S.C. §1331.

## FACTUAL BACKGROUND

The Comite de Jornaleros de Redondo Beach is an unincorporated association of day laborers who seek to address the difficulties that they face in seeking lawful

1 employment as day workers.  The National Day Laborer Organizing Network

2 ("NDLON") is a nationwide coalition of day laborers and the agencies that work

3 with day laborers.  On November 18, 2004, the Comite and NDLON ("Plaintiffs")

4 filed an Ex Parte Application for a Temporary Restraining Order and Order to Show

5 Cause Re Preliminary Injunction to prevent the City of Redondo Beach from

6 enforcing Section 3-7.1601 of the Redondo Beach Municipal Code.  On November

7 19, 2004, the parties stipulated to continue the hearing on the TRO to December 6,

8 2004.  The issues were briefed by the parties prior to the hearing.  On December 6,

9 2004, the Court granted the TRO and set hearing on the preliminary injunction on

10 December 13, 2004.

11    Section 3-7.1601(a) of the Redondo Beach Municipal Code makes it

12 "unlawful for any person to stand on a street or highway and solicit, or attempt to

13 solicit, employment, business, or contributions from an occupant of any motor

14 vehicle."[1]  The ordinance defines "street or highway" to include "roadways,

15 parkways, medians, alleys, sidewalks, curbs, and public ways."  In addition,

16 subdivision (b) of the ordinance makes it "unlawful for any person to stop, park or

17 stand a motor vehicle on a street or highway from which any occupant attempts to

18 hire or hires for employment another person or persons."  Over the last two months,

19 the Redondo Beach police have been enforcing this ordinance against day laborers

20 through aggressive tactics, including "sting" operations where undercover officers

21 posing as "employers" arrested day laborers for soliciting.  The City confirms that

22 the Redondo Beach Police Department engaged in a "Day Laborer Enforcement

23 Project" that consisted of three "phases."  On October 6-7, 2004, approximately 40

24 day laborers were arrested under Section 3-7.1601 as "Phase I" of the Day Laborer

25 Enforcement Project.  On October 19, 2004, the police conducted "Phase II," which

26 resulted in the arrest of 21 day laborers under Section 3-7.1601.  On November 3,

27

28 [1]The ordinance does not define solicitation, employment, or business.

1   2004, the police conducted "Phase III," which resulted in the arrest of four more day

2   laborers.  At the hearing on the Temporary Restraining Order, Defendant

3   acknowledged that only one potential employer has been arrested under subdivision

4   (b) of the ordinance.  A number of other potential employers were cited under

5   relevant traffic laws.

6                   **LEGAL STANDARD**

7       A preliminary injunction may be granted when plaintiffs demonstrate a

8   likelihood of success on the merits and the possibility of irreparable injury.

9   Alternatively, plaintiffs are entitled to a preliminary injunction if they show the

10   existence of serious questions going to the merits and the balance of hardships tilts

11   sharply in their favor. *See Walczak v. EPL Prolong, Inc.*, 198 F. 3d 725, 731 (9th

12   Cir. 1999). These standards are not separate tests but the extremes of a single

13   continuum which require that the trial court balance the equities in the exercise of

14   its discretion. *Id.*

15                    **ANALYSIS**

16   **A.  Plaintiffs' Standing to Challenge Subdivision (b) of the Ordinance**

17       "The doctrine of standing addresses the question 'whether a party has a

18   sufficient stake in an otherwise justiciable controversy to obtain judicial resolution

19   of that controversy.'" *Dream Palace v. County of Maricopa,* 384 F.3d 990, 999 (9th

20   Cir. 2004) (citing *Young v. City of Simi Valley,* 216 F.3d 807, 815 (9th Cir. 2000)).

21   At a minimum, Article III of the United States Constitution requires a litigant

22   invoking the authority of a federal court to demonstrate: (1) that he personally has

23   suffered some actual or threatened injury as a result of the putatively illegal conduct

24   of the defendant, (2) that the injury fairly can be traced to the challenged action, and

25   (3) that the injury is likely to be redressed by a favorable decision. *Id.*  The Court

26   finds that Plaintiffs have satisfied these Article III standing requirements.  Plaintiffs

27   have demonstrated harm or threat of future harm as a result of enforcement of

28   subdivision (b) since enforcement of this part of the ordinance directly affects day

1   laborers' ability to obtain the employment on which their livelihood depends.

2   Although Defendant indicates that only one potential employer has been arrested

3   thus far under subdivision (b), the threat of harm to Plaintiffs as a result of

4   enforcement of subdivision (b) is always present.

5       In addition to Article III standing requirements, there are prudential

6   limitations on standing which generally require plaintiffs to assert their own rights

7   rather than the rights or interests of third parties. *See McMichael v. County of Napa*

8   709 F.2d 1269, 1270 (9th Cir. 1983). The Court finds that subdivision (b) of the

9   Redondo Beach ordinance implicates Plaintiffs' right to receive information, which

10   is protected by the First Amendment. *Clement v. California Dep't of Corrections,*

11   364 F.3d 1148, 1151 (9th Cir. 2004). *Cf. Edwards v. City of Couer D'Alene,* 262

12   F.3d 856, 966 (9th Cir. 2001) (stating that to "reach the minds of willing listeners . .

13   there must be opportunity to win their attention").

14       However, even if subdivision (b) did not implicate Plaintiffs' own rights, the

15   Supreme Court has modified prudential standing considerations where the First

16   Amendment is involved. Specifically, the Supreme Court's "overbreadth" doctrine

17   functions as an exception to the general prohibition on a litigant's raising another

18   person's legal rights and is based on the idea that "the very existence of some

19   broadly written laws has the potential to chill the expressive activity of others not

20   before the court." *Forsyth County v. Nationalist Movement,* 505 U.S. 123, 129

21   (1992).[2] *See also Alexander v. United States,* 509 U.S. 544, 555, 113 S. Ct. 2766,

22   125 L. Ed. 2d 441 (1993). This same logic applies to a challenge to a law as

23   unconstitutional on its face, which, if successful, invalidates the law itself. "[F]acial

24   challenges are allowed not primarily for the benefit of the litigant, but for the

25

26   [2]The overbreadth doctrine "does not affect the rigid constitutional requirement that

27   plaintiffs must demonstrate an injury in fact to invoke a federal court's jurisdiction." *Dream Palace v. County of Maricopa,* 384 F.3d 990, 999 (9th Cir. 2004) (citations

28   omitted).

1 benefit of society - to prevent the statute from chilling the First Amendment rights

2 of other parties not before the court." *Convoy, Inc. v. City of San Diego,* 183 F.3d

3 1108, 111 (9th Cir. 1999) (internal citations omitted).  Thus, the Court finds that

4 Plaintiffs have standing to challenge subdivision (b) of the Redondo Beach

5 ordinance as overbroad and unconstitutional on its face.

6 **B. Serious Questions/ Likelihood of Success on the Merits**

7      In public fora, such as streets and highways, "the government may impose

8 reasonable restrictions on the time, place or manner of protected speech." *Ward v.*

9 *Rock Against Racism,* 491 U.S. 781, 791, 105 L. Ed. 2d 661, 109 S. Ct. 2746

10 (1989).  However, such restrictions are only valid if they are (1) justified without

11 reference to the content of the regulated speech; (2) narrowly tailored to serve a

12 significant governmental interest; and (3) leave open ample alternative channels for

13 communication of the information. *Id.; accord Clark v. Community for Creative*

14 *Non-Violence,* 468 U.S. 288, 293, 82 L. Ed. 2d 221, 104 S. Ct. 3065 (1984).  For the

15 reasons discussed below, the Court finds that the Redondo Beach ordinance is not a

16 valid time, place or manner restriction.

17      1.  <u>Whether the Ordinance is Content-Neutral</u>

18      A restriction on speech is content-neutral if it is "justified without reference

19 to the content of the regulated speech." *Clark,* 468 U.S. at 293.   In contrast, "'[a]

20 rule is defined as a content-based restriction on speech when the regulating party

21 must examine the speech to determine if it is acceptable.'" *Glendale Assocs. Ltd. v.*

22 *NLRB,* 347 F.3d 1145, 1155 (9th Cir. 2003) (quoting *Desert Outdoor Advertising v.*

23 *City of Moreno Vallely,* 103 F.3d 814, 820 (9th Cir. 1996)).  "Regulation of the

24 subject matter of messages, though not as obnoxious as viewpoint-based regulation,

25 is also an objectionable form of content-based regulation." *Hill v. Colorado,* 530

26 U.S. 703, 723 147 L. Ed. 2d 597, 120 S. Ct. 2480 (2000) (citing *Consol. Edison Co.*

27 *v. Public Serv. Comm'n,* 447 U.S. 530, 538, 65 L. Ed. 2d 319, 100 S. Ct. 2326

28

1   (1980)).

2        Plaintiffs argue that the Redondo Beach ordinance is content-based because

3   one must look at the content of the speech to determine if it is solicitation of

4   employment, business or contributions. In *ACORN v. City of Phoenix,* 798 F.2d

5   1260, 1268 (9th Cir. 1986), the Ninth Circuit found that a city ordinance almost

6   identical to the one at issue here was content-neutral because it did not "single out

7   any group" and "applie[d] evenhandedly to every organization or individual." This

8   language does not reflect the test for content-neutrality clearly articulated by the

9   Ninth Circuit in the subsequent cases of *Desert Outdoor Advertising* and *Glendale*

10  *Assocs. Ltd.*

11       The Supreme Court has not squarely addressed the issue of whether

12  regulations of commercial solicitations in public fora are content-neutral. In *United*

13  *States v. Kokinda,* 497 U.S. 720, 730, 736, 111 L. Ed. 2d 571, 110 S. Ct. 3115

14  (1990), the Court stated that a federal regulation prohibiting the solicitation of

15  contributions on postal premises "does not discriminate on the basis of content or

16  viewpoint." However, the reference to content-discrimination was dictum, as the

17  Court applied the test for nonpublic fora, which simply requires that the regulation

18  "be reasonable and 'not an effort to suppress expression merely because public

19  officials oppose the speaker's view.'" *Id.* at 731 (quoting *Perry Educ. Ass'n v. Perry*

20  *Local Educators' Ass'n,* 460 U.S. 37, 46 (1983)). In other words, the test applied by

21  the Court required only viewpoint neutrality, not content neutrality.

22       Furthermore, subsequent Supreme Court cases raise serious questions as to

23  whether the Redondo Beach ordinance is content-neutral. In *Burson v. Freeman,*

24  504 U.S. 191 (1992), where the Court considered a Tennessee law restricting

25  solicitation of votes and the display or distribution of campaign materials within

26  100 feet of polling places on election day, the Court found that restriction was *not*

27  content-neutral because it only restricted speech relating to the political campaign

28  and "[did] not reach other categories of speech, such as commercial solicitation,

1 distribution, and display." *Id.* at 197.[3]   Just as the Tennessee law was content-based

2 because it restricted only solicitation of votes, the Redondo Beach ordinance

3 restricts only solicitation of "employment, business or contributions." Moreover, in

4 *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410 (1993), the Court

5 considered an ordinance that prohibited sidewalk newsracks from dispensing

6 commercial handbills but permitted them to distribute newspapers. The Court found

7 this ordinance to be content-based because "the very basis for the regulation is the

8 difference in content between ordinary newspapers and commercial speech." *Id.* at

9 429. The Court reasoned that "whether any particular newsrack falls within the ban

10 is determined by the content of the publication resting inside that newsrack." *Id.* A

11 similar distinction may exist here, since the Redondo Beach ordinance prohibits

12 solicitation pertaining to employment, business and contributions, but not other

13 types of speech between persons standing on the street and occupants of vehicles.

14 Thus, the Court finds that *Burson* and *City of Cincinnati*, which were decided after

15 *ACORN,* raise serious questions as to whether the Redondo Beach ordinance is

16 content-based.[4]

17     2.    Whether the Ordinance is Narrowly Tailored to a Significant

18            Governmental Interest

19       In order to be narrowly tailored, a restriction on speech may not "burden

20 substantially more speech than is necessary to further the government's legitimate

21 interests." *Ward,* 491 U.S. at 799.   While the restriction need not be "the least

22 restrictive or least intrusive means" of furthering the government's interest, the

23

---

24 [3]Since the Court found the law to be content-based, it applied strict scrutiny, finding that "[t]he State
25 must show that the 'regulation is necessary to serve a compelling state interest and that it is narrowly
drawn to achieve that end.'" *Id.* at 198.

26 [4]Defendant has not argued in its briefs that the ordinance is content-neutral under the "secondary
27 effects" doctrine. Furthermore, at the hearing on the TRO, Defendant asserted that it was not relying
on this doctrine in arguing that the Redondo Beach ordinance is content-neutral. Therefore, the
28 Court does not address that doctrine here.

1  government "may not regulate expression in such a manner that a substantial portion

2  of the burden on speech does not serve to advance its goals." *Id. See also Frisby v.*

3  *Schultz,* 487 U.S. 474, 485, 101 L. Ed. 2d 420, 108 S. Ct. 2495 (1988)  ("A

4  complete ban can be narrowly tailored, but only if each activity within the

5  proscription's scope is an appropriately targeted evil.")

6      The City argues that Section 3-7.1601 is narrowly tailored to the City's

7  interest in controlling traffic flow.   It is well-settled that the City has a significant

8  interest "in promoting the safety of pedestrians and motorists and combating traffic

9  congestion." *Heffron v. International Society for Krishna Consciousness, Inc.,* 452

10  U.S. 640, 650, 101 S. Ct. 2559, 69 L. Ed. 2d 298 (1981). *See also Acorn,* 798 F.2d

11  at 1268 (recognizing "the substantial risk of disruption in crowd or traffic control

12  that may be presented by solicitation of contributions, as compared to other forms of

13  expression").   In *Acorn,* the Ninth Circuit found that the Phoenix ordinance was

14  "aimed narrowly at the disruptive nature of fund solicitation from the occupants of

15  vehicles."   In reaching this conclusion, however, the court was clearly focused on a

16  very specific type of solicitation: the direct personal solicitation of contributions

17  from drivers stopped at intersections.   The court reasoned:

18        Unlike oral advocacy of ideas, or even the distribution of literature,
19        successful solicitation requires the individual to respond by searching for
      currency and passing it along to the solicitor.  Even after the solicitor has
20        departed, the driver must secure any change returned, replace a wallet or close
      a purse, and then return proper attention to the full responsibilities of a motor
21        vehicle driver. The direct personal solicitation from drivers distracts them
      from  their primary duty to watch the traffic and potential hazards in the road,
22        observe all traffic control signals or warnings, and prepare to move through
      the intersection.

23  The Redondo Beach ordinance does not define solicitation and restricts many more

24  forms of speech than the Ninth Circuit considered in *ACORN.*  For example,

25  the Redondo Beach ordinance potentially applies to individuals seeking

26  employment from the occupants of legally parked vehicles, as well as to individuals

27  distributing leaflets advertising businesses to the occupants of legally parked

1   vehicles.  The Redondo Beach ordinance would also apply to individuals standing

2   on the sidewalk and holding up signs inviting the occupants of vehicles to pull over,

3   park and enter certain businesses.[5]  These types of expressive activities were simply

4   not considered by the Ninth Circuit in *Acorn*.   Indeed, in reaching its decision in

5   *ACORN,* the Ninth Circuit stressed that "[d]irect communication of ideas, including

6   the distribution of literature to occupants in vehicles is not restricted."  798 F.2d at

7   1268.

8        Furthermore, the facts of *ACORN* raised serious safety concerns regarding the

9   plaintiff's practice of "tagging," which involved "an individual stepping into the

10  street and approaching an automobile when it is stopped at a red traffic light."  *Id.* at

11  1261.  The court specifically noted that there was support for the district court's

12  factual finding that "'the evidence still showed that the mere presence of taggers on

13  the roadway or intersection is a potential safety hazard.'" *Id.* at 1270.  In contrast,

14  Redondo Beach has failed to present evidence showing that the mere presence of

15  day laborers soliciting employment from the sidewalk is a potential safety hazard.

16  Plaintiffs indicate that day laborers make their availability known to vehicles while

17  standing on a sidewalk and then approach the vehicle after the driver has parked or

18  pulled to the side of the road outside the traffic flow.   Moreover, the risk of drivers

19  being "distracted" appears to be significantly less where the drivers are actively

20  seeking the services of day laborers instead of being suddenly and unwillingly

21  approached by strangers.[6]   Thus, there is no evidence that the same types of safety

22

23  [5]Plaintiffs note that the American Heritage Dictionary (4th ed. 2000) defines "solicit" as "to make
    petition to," "to ask, induce, advise or command (a person) to do something," or "to attempt to
24  persuade (a person) to purchase something."  This definition is broad enough to encompass all of the
    examples noted above.  While Defendant argues that the ordinance is only applied to individuals
25  causing vehicles to stop illegally in traffic, the way in which the ordinance is actually enforced by
    Defendant is irrelevant to the issue of whether the ordinance, on its face, restricts substantially more
26  speech than is necessary to further legitimate government interests.

27

28  [6]In *ACORN,* the Ninth Circuit noted that the degree of distraction caused by plaintiff's "tagging" was
    far greater than the distraction caused by billboards or pedestrians simply walking along the highway

1   concerns which shaped the Ninth Circuit's decision in *ACORN* exist in the present

2   situation.  Instead of enforcing this broad-sweeping ordinance, the City of Redondo

3   Beach could simply enforce traffic laws such as those prohibiting jaywalking,

4   unlawful stopping and unlawful parking.  Indeed, although Defendant contends that

5   this approach is ineffective with the day laborers, this is precisely the approach that

6   Defendant seems to have taken with regard to potential employers.  As the Ninth

7   Circuit has noted, "[t]he generally accepted way of dealing with unlawful conduct

8   that may be intertwined with First Amendment activity is to punish it after it occurs

9   rather than to prevent the First Amendment activity from occurring in order to

10  obviate the possible unlawful conduct." *Collins v. Jordan,* 110 F.3d 1363, 1371-72

11  (9th Cir. 1996).  Furthermore, insofar as the evidence submitted by the City of

12  Redondo Beach suggests that the recent enforcement of the ordinance was a

13  response to complaints about day laborers committing acts of vandalism, littering,

14  and public urination near businesses, the Court finds that these activities have

15  nothing to do with speech pertaining to solicitation and should be addressed through

16  laws that specifically pertain to each of these activities. *Cf. Schneider v. States of*

17  *New Jersey,* 308 U.S. 147, 162 (1939) (finding that prevention of littering is

18  insufficient justification for a handbill ban because "[t]here are obvious methods of

19  preventing littering" including "punishment of those who actually throw papers on

20  the streets").  Thus, the Court finds that there are serious questions as to whether the

21  Redondo Beach ordinance burdens substantially more speech than is necessary to

22  further the City's significant interest in traffic flow.

23         3.     Whether the Ordinance Leaves Open Alternative Channels

24         To be valid, a restriction on speech must also leave open "ample alternative

25  channels of communication." *Perry Education Association,* 460 U.S. at 45.

26

27  _____

28  because tagging involved "an individual standing closely beside your car, peering in the window
    directly at you, and demanding a personal response from you." *Id.* at 1269 n.8.

1   Defendant contends that day laborers may solicit employment or contributions while

2   standing in parking lots adjacent to the sidewalk or driveways, and that these

3   locations provide ample alternative channels of communication. In making this

4   argument, Defendant relies on *Xiloj-Itzep v. City of Agoura Hills,* 24 Cal. App. 4th

5   620, 645 (Cal. Ct. App. 1994), where the California Court of Appeals upheld an

6   anti-solicitation ordinance similar to the one at issue here. Quoting the Fifth

7   Circuit's decision in *ISKON v. Baton Rouge,* 876 F.2d 494, 498 (5th Cir. 1989), the

8   court found that the Agoura Hills ordinance left open alternative avenues of

9   expression because it prohibited only the solicitation of funds from any person

10  traveling in a vehicle and did not prohibit solicitation of funds from pedestrians,

11  door-to-door canvassing, or telephone solicitations. *Id.* at 640-41. Unlike Redondo

12  Beach, however, Agoura Hills had established a telephone hiring exchange in order

13  to assist individuals in finding day work. The exchange created a way for day

14  laborers without telephones to solicit employment. Day laborers in Redondo Beach

15  who do not have access to a telephone hiring exchange or a hiring center lack the

16  resources to access more expensive means of making their availability for work

17  known. Furthermore, the Agoura Hills ordinance applied only to solicitation of

18  persons *traveling* in vehicles. The court specifically noted that the appellants were

19  "free to congregate on the City's sidewalks and other public areas to wait for

20  employers and to solicit work from employers that are legally parked." *Id.* at 631.

21  In finding that alternative avenues of communication were available, the court relied

22  on the existence of these public areas for congregation of day laborers, stating that

23  "it is not necessary to run out into the street or hail drivers in order to announce

24  availability for work; prospective employers know that is why men congregate at

25  certain locations and go to those locations when they wish to employ a day worker."

26  *Id.* at 641. The Redondo Beach ordinance, on the other hand, restricts soliciting

27  employment from the *occupant* of a vehicle, regardless of whether or not the vehicle

28  is parked. Thus, under the Redondo Beach ordinance, day laborers are not

1   permitted to congregate on sidewalks and solicit employment from vehicles that pull

2   over and park.

3        Furthermore, the Court finds that parking lots and driveways are not an

4   adequate alternative to sidewalks because they are private property. Defendant

5   relies on *Pruneyard Shopping Center v. Robins,* 447 U.S. 74, 64 L. Ed. 2d 741, 100

6   S. Ct. 2035 (1980) and *Glendale Associates Ltd. v. NLRB,* 347 F.3d 1145 (9th Cir.

7   2003) in arguing that parking lots are available to day laborers as an adequate

8   alternative forum. In *Pruneyard*, the Supreme Court held that a major private

9   shopping center that attracted more than 25,000 daily patrons had to provide access

10  to persons exercising their state constitutional rights to distribute pamphlets and ask

11  passers-by to sign their petitions. Similarly, *Glendale Associates* involved the

12  Galleria mall, which "consists of more than 1.3 million square feet, . . . five major

13  department stores and 60 other stores and has thirteen entrances." California courts

14  have not applied the Supreme Court's holding to smaller spaces, such as the parking

15  lot of a large grocery store, which are not the functional equivalent of a traditional

16  public forum. *See, e.g, Trader Joe's Co. v. Progressive Campaigns, Inc.* 73 Cal.

17  App. 4th 425, 533 (Cal. Ct. App. 1999); *Albertson's Inc. v. Young,* 107 Cal. App. 4th

18  106, 121 (Cal. Ct. App. 2003). Furthermore, the Supreme Court based its holding in

19  *Pruneyard* on the fact that the shopping center "may restrict expressive activity by

20  adopting time, place and manner regulations that will minimize interference with its

21  commercial functions." 477 U.S. at 83. Since shopping centers may restrict

22  expressive activities on their property, their parking lots do not constitute an

23  adequate alternative forum for the solicitation of employment, business or

24  contributions. While shopping centers in Redondo Beach may not have such time,

25  place and manner regulations at the present time, they may very well implement

26  them if day laborers moved there. Day laborers who did not abide by such

27  restrictions would risk being charged with trespass. Thus, the Court finds that there

28  are serious questions as to whether ample alternative fora for seeking employment

1   are available to day laborers.

2   **C.     Balance of Hardship/ Possibility of Irreparable Harm**

3          Since Plaintiffs raise serious questions going to the merits of the First

4   Amendment violation alleged in this case, they also establish a possibility of

5   irreparable harm. *See S.O.C., Inc. v. County of Clark*, 152 F.3d 1136, 1148 (9th Cir.

6   1998) ("The loss of First Amendment freedoms, for even minimal periods of time,

7   unquestionably constitutes irreparable injury.").   Furthermore, the Court finds that

8   the balance of hardships clearly tips in Plaintiffs' favor.  Every day that the

9   Redondo Beach ordinance is in effect, day laborers face possible arrest, fines,

10  diminishing employment opportunities, and loss of livelihood to support themselves

11  and their families. *See* Newman Dec. ¶10-12.

12  **D.     Bond**

13         Defendant did not submit any evidence of the economic harm that it would

14  suffer if the Court issues the preliminary injunction. Therefore, the Court finds that

15  no bond is required in this case.

16                                  **CONCLUSION**

17         Based on the foregoing, the Court finds that there are serious questions going

18  to the merits of this case.  In addition, the Court finds that there is a possibility of

19  irreparable harm and that the balance of hardships tilts sharply in Plaintiffs' favor.

20  Therefore, the Court GRANTS Plaintiffs' request for a preliminary injunction.

21  **IT IS SO ORDERED.**

22  **DATE:**   December 15, 2004

23                                  **CONSUELO B. MARSHALL**

24                                  **UNITED STATES DISTRICT JUDGE**

25

26

27

28

- 13 -