Priority ———
Send          ✓
Enter
Closed        ✓ 132
JS-5/JS-6 ———
JS-2/JS-3 ———
Scan Only ———

FILED
CLERK, US DISTRICT COURT

DEC 12
2006

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

DOCKETED ON CM

DEC 13 2006

BY _____ MG    009

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | | |
|---|---|---|
| COMITE DE JORNALEROS DE REDONDO BEACH et al., | ) | No.  CV 04-9396 CBM (JTLx) |
| Plaintiff | ) | ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND FOR COSTS. |
| v. | ) | |
| CITY OF REDONDO BEACH, | ) | |
| Defendant. | ) | |

The matter before the Court, the Honorable Consuelo B. Marshall, United States District Judge presiding, is Plaintiffs' Motion for Attorneys' Fees and Costs.  This Court has jurisdiction pursuant to 28 U.S.C. §1331.

Upon consideration of the issues submitted, the Court grants Plaintiffs' Motion for Attorneys' Fees and Costs in the amount of $208,562.66.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In November 2004, Plaintiffs Comite de Jornaleros de Redondo Beach and

1   the National Day Laborer Organization filed a Complaint seeking Injunctive and

2   Declaratory Relief challenging Redondo Beach Municipal Code §3-7.1601 (a)

3   (b).[1]  The Complaint alleged that the Municipal Code violated the First and

4
    Fourteenth Amendments of the United States Constitution by restricting Plaintiffs'
5
6   members' ability to solicit employment in public areas and preventing potential

7   employers from hiring those members.

8        On November 18, 2005, Plaintiffs filed a Motion for Preliminary Injunction

9   and both parties filed cross-Motions for Summary Judgment.  This Court granted

10  Plaintiffs' Motion for Preliminary Injunction on December 15, 2005, which the

11
    Ninth Circuit affirmed.  On April 27, 2006, this Court granted Plaintiffs' Motion
12
13  for Summary Judgment, and permanently enjoined the city from enforcing

14  Municipal Code §3-7.1601.

15       On July 26, 2006, Plaintiffs filed this Motion for Attorneys' Fees,

16
    requesting fees in the amount of $186,106.50 (plus time expended on this Motion)
17
18  and costs in the amount of $4,437.60 (pursuant to the Civil Rights Attorneys' Fee

19
    ---
20  [1] Municipal Code §3-7.1601 provides in full:

21       (a)   It shall be unlawful for any person to stand on a street or highway
                and solicit, or attempt to solicit, employment, business, or
22              contributions from an occupant of any motor vehicle. For
                purposes of this section, 'street or highway' shall mean all of that
23              area dedicated to public use for public street purposes and shall
                include, but not be limited to, roadways, parkways, medians,
24              alleys, sidewalks, curbs, and public ways.

25       (b)   It shall be unlawful for any person to stop, park or stand a motor
                vehicle on a street or highway from which any occupant attempts
26              to hire or hires for employment another person or persons.

27
28                                    -2-

1  Award Act of 1976, 42 U.S.C. §1988 (b)).

2  On October 30, 2006, Plaintiffs submitted supplemental declarations

3  attesting to the time spent on this matter since the filing of the original Motion for

4  fees ("fees-on-fees"). Plaintiffs' counsel Robert Rubin, of the Lawyers'

5  
6  Committee for Civil Rights, attests to the billing records (from May 30, 2006 to

7  October 25, 2006) of himself, Philip Hwang, and Elisa Della-Piana. Plaintiffs'

8  counsel Angela Padilla, of Morrison and Foerster, attests to the billing records

9  (from June 20, 2006 to the present) of herself and Mahogany Jenkins. In these

10  supplemental declarations, Plaintiffs' counsel requests additional fees in the
11  
12  amount of $64,787.25, and additional costs in the amount of $3,108.80.

13  In sum, Plaintiffs have requested $250,893.75 in attorneys' fees, and

14  $7,546.40 in costs.

15  **STANDARD OF LAW**

16  
17  42 U.S.C. §1988 provides that in federal civil rights actions "the court, in its

18  discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of

19  the costs." 42 U.S.C. §1988 (b). A "prevailing party" under §1988 is "a party

20  [who] has prevailed on the merits of at least some of his claims." *Hanrahan v.*

21  *Hampton*, 446 U.S. 754, 758 (1980) (*per curiam*).

22  The party applying for fees "bears the burden of establishing entitlement to
23  
24  an award and documenting the appropriate hours expended and hourly rates."

25  *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983). When determining fees, the

26  Ninth Circuit requires that district courts calculate a "lodestar." *See Allen v.*

27  
28  - 3 -

1   *Shalala,* 48 F.3d 456, 458 (9th Cir. 1995).  The lodestar is determined by

2   multiplying the number of hours reasonably spent on a case by a reasonable hourly

3   rate.  *See Hensley,* 461 U.S. at 433.

4
5     The lodestar may then be adjusted by considering the twelve factors

6   articulated in *Kerr v. Screen Extras Guild Inc.*, including: (1) the time and labor

7   required; (2) the difficulty and novelty of the issues; (3) the skill required; (4)

8   preclusion of other employment by the attorney; (5) the customary fee; (6) whether

9   the fee is contingent or fixed; (7) the restraints imposed by the client on the

10  circumstances; (8) the amount involved and the results achieved; (9) experience,

11  ability, and reputation of the attorneys; (10) the "undesirability" of the case; (11)

12
13  nature and length of the professional relationship between the attorney and client;

14  and (12) awards in similar cases.  *See* 526 F.2d 67, 69-70 (9th Cir. 1975); *see also*

15  *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1065 (9th Cir. 2006)

16  (affirming *Kerr* standard for attorneys' fees).

17
18            **ANALYSIS**

19    The Court finds that Plaintiffs are the prevailing party in the instant case,

20  and pursuant to §1988, are entitled to legal fees for time expended on this case, as

21  well as for time expended in the preparation of this fee application.

22  **I.  Reasonable Fees**

23
24    In determining a fee award under 42 U.S.C. §1988, a court must calculate a

25  reasonable fee by determining a reasonable hourly rate and multiplying it by the

26  reasonable number of hours required to preform the work on the case.  *See*

27
28             - 4 -

*Hensley,* 461 U.S. at 437.  This Court has discretion to determine a reasonable hourly rate by taking into consideration its knowledge of prevailing rates in the community and the experience of the attorneys involved.  *See Blum v. Stenson,* 465 U.S. 886 (1984); *Chalmers v. City of Los Angeles*, 796 F.2d 1205 (9th Cir. 1986), *amended*, 808 F.2d 1373 (9th Cir. 1987).

### A.   Reasonable Rate

Under 42 U.S.C. §1988, a reasonable hourly rate is one "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001).

Plaintiffs request various rates ranging from $225/hour for their less experienced counsel to $625/hour for their most experienced counsel.  *See* Pl. Mot. 5.  Plaintiffs also request rates of $165 to $175/hour for the work of their paralegals.  The fees requested by Plaintiffs are as follows:

| Name | Employer | Law School (Year) | Requested Hourly Rate |
|---|---|---|---|
| Angela Padilla | Morrison & Foerster | Columbia (1991) | $565.00 (2005) $600.00 (2006) |
| Mahogany Jenkins | Morrison & Foerster | USC (2004) | $225.00 (2005) $285.00 (2006) |
| Alexei Klestoff | Morrison & Foerster | Georgetown (2002) | $295.00 |

| Robert Rubin | LCCR | Not Stated (1978) | $625.00 |
| Philip Hwang | LCCR | Harvard (1996) | $400.00 |
| Elisa Della-Piana | LCCR | Boalt Hall (2002) | $295.00 |
| Thomas Saenz | MALDEF | Yale (1991) | $495.00 |
| Shaheena Simons | MALDEF | Yale (2001) | $315.00 |
| Araceli Perez | MALDEF | Hastings (2002) | $300.00 |
| Rodriguez (Paralegal) | MALDEF | N/A | $160.00 |
| Courtland (Paralegal) | Morrison & Foerster | N/A | $175.00 |

   Defendant objects to the rates requested for four members of Plaintiffs

counsel: (1) Robert Rubin, a 1978 law school graduate who has been practicing

for 27 years and is considered to be amongst the top constitutional lawyers in the

San Francisco Bay Area; (2) Angela Padilla, a 1991 Columbia Law School

graduate who is currently a litigation partner at Morrison & Foerster in Los

Angeles; (3) Thomas Saenz, a 1991 Yale Law School graduate who has litigated

numerous federal civil rights cases; and (4) Phillip Hwang, a 1996 Harvard Law

Graduate.  Defendant argues that the prevailing rates for attorneys with similar

experience in similar matters is $300 to $400/hour and requests a rate of

$350/hour for the most experienced attorneys here. *See* Def's. Opp. to Pls.' Mot. 7.

Additionally, Defendant provides declarations of attorneys practicing in Riverside

County, California, supporting reasonable fee awards ranging from $210/hour in

1987 to "well over" $350/hour presently.  *See* Decl. of Eugene P. Ramirez, Ex. A., 30.

Plaintiffs use their own declarations to support their claim that the requested rates are reasonable for attorneys in Los Angeles.  Additionally, Plaintiffs provide the declarations of two attorneys not associated with the case who attest to their familiarity with reasonable rates in Los Angeles:  The declaration of Mark Rosenbaum states that the rates sought for Robert Rubin and Thomas Saenz are reasonable for civil rights attorneys with similar experience.  *See* Decl. of Mark Rosenbaum 2; similarly, the declaration of James Webster – a Partner in the Los Angeles office of Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP – states that Quinn Emanuel's hourly rates are as follows:

| Position (Graduation Year) | Hourly Rate |
|---|---|
| Associate (2002) | $360.00 |
| Associate (2001) | $370.00 |
| Partner (1996) | $625.00 |
| Partner (1991) | $650.00 to $675.00 |
| Partner (1978) | $725.00 |

Based on this evidence regarding the prevailing rate in this community for counsel of similar experience, the Court finds that the requested rates for all of Plaintiffs' attorneys are reasonable.  Defendant's estimate of $350/hour for only the most experienced attorneys is low, given that this is the prevailing rate for attorneys in Riverside, California.  *See* Decl. of Eugene P. Ramirez, Ex. E.  The customary rates for attorneys in Los Angeles is significantly higher; moreover,

- 7 -

1  Plaintiffs' declarations from two attorneys not associated with the case place

2  reasonable rates for Los Angeles area attorneys at rates *even higher* than those

3  being requested by Plaintiffs.

4

5       Although the Court finds that the requested rates for Plaintiffs' counsel are

6  reasonable, Plaintiffs fail to provide any evidence to support the rates requested

7  for their paralegals – $160/hour for Rodriguez of MALDEF and $175/hour for

8  Courtland of Morrison & Foerster.  Defendants, citing only their own rates of

9  $120/hour for paralegals, request the same rate for Plaintiffs' paralegals.  Earlier

10 this year, this Court awarded $125/hour to paralegals in a civil rights action

11 against the federal government for work performed between 2002 and 2004,

12 finding that rate to be reasonable and within the prevailing market rate.  *See*

13 *Rodriguez,* No. CV-99-11821 CBM (C.D. Cal. June 2, 2006) (Order re: Amount of

14 Plaintiff's Requested Attorneys' Fees).  Plaintiffs' counsel on this case, the

15 Mexican American Legal Defense and Educational Fund, were plaintiff's counsel

16 in *Rodriguez.*  In *Rodriguez,* Fermin Rodriguez requested $160/hour for work

17 performed in 2004, and requests the same rate for services in this case.  This Court

18 held in *Rodriguez* that in light of the reasonable rates in Los Angeles for

19 paralegals, and the lack of any evidence that this particular paralegal (Fermin

20 Rodriguez) was of greater skill than other paralegals, the $125/hour rate was

21 reasonable.

22       In the instant case, the two paralegals performed various tasks in 2004 and

23 2005, including: (1) meeting with clients; (2) cite checking; (3) proofreading; and

- 8 -

(4) various clerical tasks.  The Plaintiffs do not provide any information as to the reasonableness of the requested rates; moreover, this Court's finding in *Rodriguez* that $125/hour was reasonable for the relevant time period leads to the conclusion that the hourly rates for paralegals in Los Angeles have remained stable in recent years at $125/hour.  Therefore, the Court finds that a reasonable rate of $125/hour for paralegals is appropriate based on the rate found reasonable in *Rodriguez,* which included work performed in the same time period (2004), and the prevailing rate for paralegals in Los Angeles.  *See Rodriguez v. United States of America,* No. CV 99-11821 CBM (C.D. Cal. June 2, 2006) (Order re: Amount of Plaintiff's Requested Attorneys' Fees).

In sum, the Court finds that the following rates are appropriate in determining the lodestar:

| Attorney | Reasonable Rate (per hour) |
| --- | --- |
| Rubin | $625.00 |
| Padilla | $565.00 (2005) <br> $600.00 (2006) |
| Saenz | $495.00 |
| Hwang | $400.00 |
| Simons | $315.00 |
| Perez | $300.00 |
| Klestoff | $295.00 |
| Della-Piana | $295.00 |
| Jenkins | $225.00 (2005) <br> $285.00 (2006) |

| Paralegal | Reasonable Rate (per hour) |
|-----------|----------------------------|
| Rodriguez | $125.00 |
| Courtland | $125.00 |

These rates are reasonable given the experience of counsel, the prevailing rates in Los Angeles, and fee awards in similar matters in the Central District.

Although Plaintiffs' counsel Morrison & Foerster has submitted billing records for an additional staffmember, T. Laura Arago, counsel included no information about the qualifications of Ms. Arago, and no information regarding a requested hourly rate. As such, the Court has excluded Ms. Arago's hours (performed on July 26, 2006) from its lodestar calculation.

**B.    Reasonable Hours**

The second factor in determining a reasonable fee is to determine the reasonable number of hours necessary to perform the litigation tasks associated with the case. In *Trs. of Dirs. Guild of Am. Producer Pension Benefits Plan v. Tice*, the Ninth Circuit held that counsel "is not required to record in great detail how each minute of his time was expended." 234 F.3d 415, 421 (9th Cir. 2003) (quoting *Hensley*, 461 U.S. at 437 n.12 (1983). However, the court may reduce time claimed for hours it determines to be "excessive, redundant, or otherwise unnecessary." *Hensley* at 434.

Plaintiffs provide detailed time sheets for all attorneys and paralegals who participated in this case. After examining the time sheets attached to Plaintiffs' Declarations, the Court finds that the records conform with *Tice*, in that they

include descriptions of what each attorney was working on particular days and the amount of time required for each activity.

The Defendant argues that the time sheets presented by Plaintiff reflect overbilling. Defendant cites three bases for its claim of overbilling: (1) the presence of "block billing"; (2) the use, by some timekeepers, of quarter-hour increments; and (3) duplicate work by virtue of having nine attorneys assigned to the case. Defendant also objects to certain hours billed by Plaintiffs' counsel for post-judgment work relating to the appeal and the City's *ex parte* application to stay the Court's order pending appeal.

### 1.    Block Billing

Defendant argues that Plaintiffs' use of "block billing" lacks sufficient detail to inform the client of the work preformed and how long it took to preform. Defendant contends that block billing is unreasonable because it frustrates the determination of whether the work was performed or was even necessary. In *Lytle v. Carl*, the Ninth Circuit upheld a district court order finding that "counsel need only identify the general subject of their time expenditures." 382 F.3d 978, 989 (9th Cir. 2004). As per *Lytle,* Plaintiffs' counsel's use of "block billing," in which the subject matter of the work performed is identified, is permissible because it successfully identifies the general subject of the time expenditure.

### 2.    Quarter-Hour Billing

Defendant also argues that the quarter-hour billing increment used by some members of Plaintiffs' litigation team led to excessive hourly billing. Defendant

-11-

cites the California State Bar Mandatory Fee Arbitration Advisory, No. 03-01, which states "the standard minimum is 1/10th of an hour or 6 minutes. If a higher minimum is used, such as .25 or .5, this probably increases the time by 15% to 25%." *See* Decl. of Eugene P. Ramirez in Opp. to Pls.' Mot., Ex. F.

In 1997, Judge Ideman of this District reduced a fee award by 5% in a class action where thousands of hours were expended in litigation, finding that, when aggregated, quarter-hour billing created a threat of overbilling. *See Zucker v. Occidental Petroleum*, 968 F.Supp. 1396 (C.D. Cal. 1997). However, in a more recent Central District case, Judge Collins refused to reduce a fee award due to quarter-hour billing, which that court found to be standard practice in the Los Angeles area. *See U.S. v. $60,201.00*, 291 F.Supp.2d 1126, 1131 (C.D. Cal. 2003).

In the instant case, Defendant requests a 5% reduction of the hours billed on the grounds that counsel employed quarter-hour increments. Only three of the nine Plaintiffs' attorneys and one paralegal, accounting for approximately one-quarter of the total hours spent on litigation, billed in quarter-hour increments. All others indicated periods with one-tenth hour increments. Additionally, the amount of attorney time expended on this case is more analogous to the hours expended in *U.S. v. $60,201.00*, rather than the thousands of hours expended by counsel in *Zucker*, thereby reducing the risk of aggregated overbilling. Therefore, the Court finds that no reduction is required due to quarter-hour billing increments, given the limited number of entries billed in quarter-hour increments and the common

1   Los Angeles area practice of billing in those units.

2          **3.**    **Duplication**

3        Defendants contend that the use of nine attorneys on this matter resulted in

4   the duplication of work.[2]  Several courts, including this Court and the Ninth

5

6   Circuit, typically reduce fee awards when, upon an examination of submitted time

7   records, duplicative efforts are found.  *See, e.g., Chalmers v. City of Los Angeles*,

8   796 F.2d 1205, 1210 (9th Cir. 1985) (stating fees should be reduced "if a case was

9   overstaffed and hours duplicated");  *Rodriguez v. United States of America,* No.

10  CV 99-11821 CBM (C.D. Cal. June 2, 2006) (order re: amount of plaintiff's

11
    requested attorneys' fees) (finding 20% reduction in hours acceptable after review
12

13  of time records); *Lytle v. Carl*, 382 F.3d 978 (9th Cir. 2004) (reducing number of

14  hours due to time new attorneys spent learning case); *U.S. Equal Employment*

15  *Opportunity Comm'n v. Reeves & Assoc.,* No. CV 00-10515 DT (C.D. Cal. Jan.

16  13, 2006) (Tevrizian, J.) (reducing number of hours by 30% due to excessive
17
    duplication); *Carston v. County of Cook,* 962 F.2d 749, 754 (7th Cir. 1992)
18

19  (upholding district court decision to reduce fees "slightly" to account for

20  duplication).  After reviewing the time sheets submitted by Plaintiffs, the Court

21  finds that this matter was overstaffed and some hours were duplicated.

22       Plaintiffs argue that the use of nine attorneys was necessary because of the

23

24

    ――――――――――――

25  [2]The time sheets indicate that no more than two attorneys attended any hearing and,
26  therefore, no issues of duplicative hours exist with respect to attendance at hearings.

27

28                 - 13 -

1   time in which they had to file motions and the aggressive nature of Defendant's

2   defense.  Plaintiffs further contend staffing shortages at MALDEF necessitated

3   additional outside counsel.  However, several members of Plaintiffs' litigation

4   team worked on the same motions:  Two attorneys, Saenz and Simon, both spent

5   time drafting the Motion for a Temporary Restraining Order; six other attorneys,

6   Padilla, Klestoff, Rubin, Della-Piana, Hwang and Jenkins, worked on the

7   Opposition to Defendant's Motion for Summary Judgment and Plaintiffs' Reply in

8   support of their Motion for Summary Judgment.

9

10      Although Plaintiffs allege that each attorney worked on distinct portions of

11   the moving papers, *see* Padilla Decl. 2, vagueness in the billing entries make it

12   difficult to determine whether each attorney worked on a distinct portion of the

13   moving papers.  For example, attorneys Saenz and Simons both list their work on

14   the preliminary injunction as follows:

15

16

| Work Performed (as described) | Saenz (hours) | Simons (hours) | Total (hours) |
|---|---|---|---|
| Draft/Revise P. & A. for TRO and OSC re: Prelim. Inj. | 12.8 | 2.7 | 15.5 |
| Pl. Reply app. for TRO and OSC re: Prelim. Inj. | 1.5 | 9.3 | 10.8 |

        Plaintiffs also allege that they reduced their hours by not including time

spent on individual meetings with the day laborers affected by the challenged

Ordinance and by using the most cost-effective personnel capable of preforming

each task.  *See* Decl. of Thomas A. Saenz 2. At the same time, however, Plaintiffs'

- 14 -

billing records include duplicate entries for meetings and conferences between and among the litigation team.

Duplicative work is also apparent on the Opposition to Defendant's Motion for Summary Judgment and Reply in Support of Plaintiffs' Motion for Summary Judgment. Again, vague descriptions and block billing make it difficult to determine how much time was spent by each attorney and how much duplicative work was done. Plaintiffs' counsels' billing records indicate the number of hours worked on these motions as follows:

| Work Performed | Padilla | Klestoff | Jenkins | Rubin | Della-Piana | Hwang | Total |
|---|---|---|---|---|---|---|---|
| Opp. to Summ. J. | 8.0 | 14.75 | 0.0 | 14.75 | 0.0 | 27.0 | 64.5 |
| Reply to Summ. J. | 4.25 | 1.0 | 21 | 0.0 | 0.8 | 0.0 | 27.05 |
| Review Def. Mot. for Summ. J. | 0.0 | 2.0 | 0.0 | 1.25 | 0.0 | 0.0 | 3.25 |
| Review Def. Opp. to Summ. J. | 0.0 | 1.25 | 11.25 | 1.25 | 0.0 | 0.0 | 13.75 |
| Draft Reply to Summ. J. | 0.0 | 8.0 | 0.0 | 11.25 | 0.0 | 0.0 | 19.25 |

Plaintiffs' billing records indicate that 64.5 hours were required to complete Plaintiffs' Opposition to Defendant's Motion for Summary Judgment; however, Plaintiffs' block billing technique includes multiple tasks in the same billing entry, thereby making it difficult to parse out the amount of time each attorney worked on a particular motion or activity. Furthermore, although Plaintiffs' counsel's

- 15 -

declarations state that each attorney worked on discrete aspects of the motion, the time sheets do not indicate with clarity who worked on what portions, or that they were, in fact, discrete.  Finally, Plaintiffs' attorney Phillip Hwang lists a total of 10.5 hours where he reviewed the briefings in this case, the case-file, and the law. *See Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1985) (stating fees should be reduced "if a case was overstaffed and hours duplicated").

Plaintiffs' Motion for Summary Judgment, along with their opposition to the Defendant's cross-Motion for Summary Judgment, concentrates on two key issues: (1) do Plaintiffs have associational standing to bring suit; and (2) did the Redondo Beach Ordinance violate Constitutional rights to freedom of speech. Many of the same cases are cited in each document with similar arguments being made and rebutted.  The Court finds that because the arguments made in these two filings are similar, the amount of time Plaintiffs' counsel attributes to work done on the Opposition to Defendant's Motion for Summary Judgment and Plaintiffs' Reply in Support of their Motion for Summary Judgment (64.5 hours, and 27.05 hours, respectively) are excessive.

The Court finds that Plaintiffs' requested hours should be reduced by 10% in order to cure any duplicative efforts by Plaintiffs' litigation team.  This deduction is reasonable in light of the number of attorneys working on the case, the work necessary to be performed, the time spent by new attorneys to learn the case, and the time necessary to keep nine attorneys informed of current proceedings regarding the various issues.

As the issues of duplication and vagueness are not implicated in the requested hours for Plaintiffs' paralegals, the Court finds that no deduction of

paralegal hours is warranted.

### 4. Post-Judgment Work

Finally, the Court hereby finds that time spent on post-judgment matters, such as appeals or Defendant's *ex parte* application to stay pending appeal, are not recoverable. Defendant has identified the specific entries in their Opposition to the Plaintiffs' Supplemental Request for Fees. The challenged hours are as follows:

| Attorney | Unrecoverable Time/ Post-Judgment Matters (hours) |
|---|---|
| Mahogany Jenkins (Morrison & Foerster) | 3.25 |
| Robert Rubin (LCCR) | 12.00 |
| Philip Hwang (LCCR) | 25.90 |
| Elisa Della-Piana (LCCR) | 1.80 |

These hours will be deducted from Plaintiffs' requested reasonable hours prior to any deductions based on duplicativeness or vagueness.

The Court hereby finds that the following hours, which are used in calculating the lodestar, to be reasonable:

| Attorney | Hours Requested | Post-Judgment Work (Unrecoverable) | Deduction (Duplicativeness/ Vagueness) | Total (Hours) |
|---|---|---|---|---|
| Klestoff | 27 | N/A | 10% | 24.3 |
| Padilla | 17.25 | N/A | 10% | 15.525 |
| Perez | 22.9 | N/A | 10% | 20.61 |
| Della-Piana | 10.45 | -1.80 | 10% | 7.785 |

| Jenkins | 155.50 | -3.25 | 10% | 137.025 |
| Hwang | 114.30 | -25.90 | 10% | 79.56 |
| Rubin | 154.90 | -12.00 | 10% | 128.61 |
| Simons | 38.7 | N/A | 10% | 34.83 |
| Saenz | 43.6 | N/A | 10% | 39.24 |

| Paralegal | Hours Requested | Post-Judgment Work (Unrecoverable) | Deduction (Duplicativeness/ Vagueness) | Total Hours |
|---|---|---|---|---|
| Rodriguez | 28.4 | N/A | N/A | 28.4 |
| Courtland | 16.25 | N/A | N/A | 16.25 |

The hourly reductions proposed are reasonable to cure any possible overbilling resulting from duplication of work by Plaintiffs' counsel.

## C.   Lodestar Calculation

To calculate the "lodestar", courts multiply the number of hours reasonably worked on a case by the reasonable rate as determined by counsel in an area. The lodestar in this case is calculated as follows:

| Attorney | Reasonable Rate | Reasonable Hours | Total (Hours x Rate) |
|---|---|---|---|
| Klestoff | $295.00 | 24.3 | $7,168.50 |
| Padilla (2005) | $565.00 | 12.825 | $7,246.125 |
| Padilla (2006) | $600.00 | 2.7 | $1,620.00 |
| Perez | $300.00 | 20.61 | $6,183.00 |
| Della-Piana | $295.00 | 7.785 | $2,296.575 |
| Jenkins (2005) | $225.00 | 69.975 | $15,774.375 |

| Jenkins (2006) | $285.00 | 66.725 | $19,016.625 |
| Hwang | $400.00 | 79.56 | $31,824.00 |
| Rubin | $625.00 | 128.61 | $80,381.25 |
| Simons | $315.00 | 34.83 | $10,971.45 |
| Saenz | $400.00 | 39.24 | $15,696.00 |
| | Total: | 487.16 | $198,177.90 |

| Paralegal | Reasonable Rate | Reasonable Hours | Total (Hours x Rate) |
|---|---|---|---|
| Rodriguez | $125.00 | 28.4 | $3,550.00 |
| Courtland | $125.00 | 16.25 | $2,031.25 |
| | Total: | 44.65 | $5,581.25 |

The lodestar for this case, therefore, is $203,759.15.

**D.   Kerr Factors**

There is a strong presumption that the lodestar represents a reasonable fee. *See City of Burlington v. Dague*, 505 U.S. 557, 561 (1992). A court may adjust the lodestar, however, based on the twelve factors outlined in *Kerr v. Screen Extras Guild Inc. See* 526 F.2d 67, 69-70 (9th Cir. 1975). Among the subsumed factors presumably taken into account in the lodestar calculation are: (1) the novelty and complexity of the issues; (2) skill and quality of representation; (3) special experience of counsel; (4) results obtained; and (5) contingent nature of the fee agreement. *See Cabrales v. County of Los Angeles*, 864 F.2d 1454 (9th Cir. 1988); *City of Burlington v. Dague*, 505 U.S. 557 (1992).

A court will upwardly adjust a fee only in extraordinary cases, such as when an attorney is faced with an exceptional risk of not prevailing or not recovering fees. *See Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1212 (9th Cir. 1986).

The burden is on the party requesting adjustment to the lodestar to prove the adjustment is necessary. *See Blum v. Stenson*, 456 U.S. 886, 898 (1984).

### 1.   Time and Labor Required

The time and labor required to handle this case appears to be well represented in the time sheets and filings of the parties. This case included a request for a Temporary Restraining Order and Preliminary Injunction which were granted and appealed by the Defendant. This required Plaintiffs to expend time and labor challenging the Defendant's appeal to the Ninth Circuit. Additionally, the cross-Motions for Summary Judgment required extensive time and labor to draft and argue, which is reflected in the hours spent on the task. All of the factors relating to time and labor are, therefore, included in the initial lodestar calculation.

### 2.   Difficulty and Novelty of the Issue

Difficulty and novelty can be assessed by looking at the issues presented in this case. The first issue in the instant case involved the ability of an association to assert standing based on the injury to its members; the second issue was one of the constitutionality of an ordinance which had gone unchallenged for approximately fifteen years. Constitutional issues are almost always complex; however, because the counsel on this cases consisted of highly experienced constitutional law litigators, who are often presented with the question of associational standing, the difficulty and novelty have already been included in both the hours and rates requested by Plaintiff and the lodestar calculated by this Court.

### 3.   Skill Required

The skill required to bring this suit is assessed by looking at the claims for relief of the Plaintiffs. In this case, the Plaintiffs sought relief based on complex

issues of constitutionality, requiring skilled attorneys with experience in that practice area. This factor has already been included in the lodestar calculation based on the high level of skill and experience of Robert Rubin (with over twenty-five years of constitutional law experience), Thomas Saenz, Phillip Hwang, and Angela Padilla.

### 4.    Preclusion of Other Employment by the Attorney

Plaintiffs' counsel from the Lawyers Committee on Civil Rights argue that they were precluded from other employment for six weeks based on their work in this case. *See* Pl. Reply Mem. 8.  However, Plaintiffs' counsel fail to identify any opportunities they were precluded from accepting (by this action) and, therefore, no adjustment has been made for preclusion.

### 5.    Customary Fee

The customary fee has already been considered in the initial lodestar calculation. In this case, the Court has looked at the fees paid to attorneys of similar experience in the City of Los Angeles and determined reasonable fees for each of the Plaintiffs' attorneys.

### 6.    Whether the Fee is Contingent or Fixed

This factor does not apply in this case because there was no contingency or fixed fee agreement and Plaintiffs' counsel seek compensation based on 42 U.S.C. §1988.

### 7.    The Restraints Imposed by the Client on the Circumstance

This factor does not apply in this case because Plaintiffs' counsel volunteered their time on this civil rights action.

### 8.    The Amount Involved and the Results Achieved

Plaintiffs do not argue that an upward adjustment is appropriate based on the results obtained; therefore, no upward adjustment is appropriate in this case. *See Blum*, 456 U.S. at 898 (holding district court abused its discretion when it awarded 50% upward adjustment without any evidence or argument by fee applicant as to appropriateness of such an adjustment).

### 9. Experience, Ability and Reputation of the Attorneys

Plaintiffs' counsel were all highly skilled, including lead counsel, Robert Rubin, who has been recognized as one of the top civil rights attorneys in the San Francisco Bay Area. The other counsel graduated from leading law schools, including Georgetown, Columbia, Hastings, Boalt Hall, University of Southern California, Yale, and Harvard. This factor has been included in the lodestar calculation based on the rates being paid to Plaintiffs' counsel.

### 10. The "Undesirability" of the Case

This factor has no effect on the calculation in a case such as this, particularly when lead counsel consists of civil rights attorneys who often practice in this area, and have made no showing that the case was "undesirable" for any reason.

### 11. Nature and Length of the Professional Relationship Between the Attorney and Client

This factor does not apply in this case because the clients did not have a prior professional relationship with counsel.

### 12. Awards in Similar Cases

This factor has already been included in the lodestar calculation. The Court has considered a similar case involving Plaintiffs' counsel (*Rodriguez v. United States*), and the fees awarded in the instant case are comparable to those awarded in

that case.

Accordingly, this Court will use the lodestar as the correct reasonable calculation of fees because neither party associated with this case indicate any reason as to why a departure from the lodestar would be appropriate in achieving a reasonable fee.  The Court finds that the appropriate lodestar amount of attorneys' fees to which Plaintiffs are entitled is $221,237.30.  All relevant *Kerr* factors are already included in the reasonable rate and reasonable hour calculations, and no independent basis exists for a *Kerr* adjustment.

## II.    Costs

Plaintiffs seek $4,535.57 in costs for facsimile, photocopying, travel and messenger services as follows:

| Counsel | Expense | Amount |
|---------|---------|--------|
| Lawyers' Committee for Civil Rights (LCCR) | Postage and Delivery | $    7.20 |
| LCCR | Telephone and Electronic Communications | $   10.38 |
| LCCR | Travel | $1,388.81 |
| LCCR | Meetings Sponsored | $   25.00 |
| MALDEF | Printing and Copying | $ 795.50 |
| MALDEF | Faxing | $ 456.12 |
| MALDEF | Postage | $ 112.41 |
| MALDEF | Court Fees | $ 439.34 |
| MALDEF | Docket Fees | $    3.84 |
| MALDEF | Travel Expenses | $ 176.14 |

| MALDEF | Telephone | $ 35.59 |
| Morrison & Foerster | Fax | $ 48.00 |
| Morrison & Foerster | Court Messenger Service | $ 523.10 |
| Morrison & Foerster | Document Preparation | $ 17.50 |
| Morrison & Foerster | Photocopies | $ 469.14 |
| Morrison & Foerster | Messenger Service | $ 27.50 |
| | **Total** | **$4,535.57** |

Local Rule 54-3 requires the party entitled to taxable costs to (i) file a notice to the Clerk to Tax Costs and (ii) lodge a verified Bill of Costs within fifteen days of the entry of judgment.[3] Local Rule 54-4 lists specific items which are taxable as costs.[4] Those out-of-pocket expenses not taxable as costs are nevertheless recoverable if they are the types of costs normally charged to fee-paying clients. *See Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 (9th Cir. 1986)

[3] Local Rule 54-3 reads in its entirety:
> Within fifteen (15) days *after entry of judgment*, the party entitled to costs shall file a Notice of Application to the Clerk to Tax Costs and shall lodge a verified Bill of Costs on Form CV-59 in accordance with the instructions on said form. The Bill of Costs and the Application to the Clerk to Tax Costs shall be prepared as two separate documents. The Bill of Costs will be lodged when presented for filing and will be filed at the time of determination of allowable costs by the Clerk of the Court. All costs shall be specified so that the nature of the claim can be readily understood.

(emphasis added).

[4] Local Rule 54-4 lists the following items as taxable by the by the Clerk of the Court: (1) filing fees; (2) fees for service of process; (3) United States Marshall's fees; (4) Clerk's fees; (5) reporter's transcripts; (6) depositions; (7) witness fees; (8) interpreter's and translator's fees; (9) docket fees; (10) masters, commissioners and receivers; (11) certification, exemplification and reproduction of documents; (12) premiums on undertakings and bonds; (13) other costs; (14) state court costs.

1  (allowing recovery of travel expenses).  Expenses not taxed as costs must be

2  necessary and reasonable.  *See Harris v. Marhoefer*, 24 F.3d 16, 19-20 (finding

3  costs for "out of pocket" expenses reasonable given plaintiffs' justification in

4  moving papers); *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1556

5

6  (9th Cir. 1992) (attorneys' fee awards can include reimbursement for out-of-pocket

7  expenses such as travel, messenger, and copying costs), *vacated in part on other*

8  *grounds*, 984 F.2d 345 (9th Cir. 1993).

9      The Court finds that some of Plaintiffs' requested costs are recoverable as

10  taxable costs, and should have been included in Plaintiffs' timely bill of costs:

11
12  These costs include MALDEF's requested "court fees" in the amount of $439.34

13  and "docket fees" in the amount of $3.84.  The Court entered judgment in this case

14  on June 2, 2006.  The Parties stipulated and the Court granted an extension to July

15  26, 2006, to file the Motion for Award of Attorneys' Fees and Costs.  Plaintiffs did

16  not file their notice to the Clerk to Tax Costs until August 2, 2006.  On August 3,

17
18  2005, Court Support Supervisor Robert Flores rejected the Notice of Application

19  and Application to Tax Costs because it was not submitted within fifteen days of

20  entry of the Judgment, thus violating Rule 54-3.[5]  Plaintiffs' failure to submit their

21  application for costs in a timely manner bars their request.  *See Cunningham v.*

22  *County of Los Angeles*, 879 F.2d 481 (9th Cir. 1988) (finding that failure to comply

23
24  with local rules filing provisions barred recovery of taxable costs).  As such, the

25  Court declines to award any such taxable costs pursuant to the instant Motion.

26      The Court further finds that some of Plaintiffs' requests for costs include no

27
28

[5]Plaintiffs offer no explanation as to why their request for costs was late.

evidence linking the expenditure of funds to the instant litigation. For example, Exhibit E to the Rubin Declaration (filed on July 26, 2006) which is a list of costs allegedly expended by the Lawyers' Committee for Civil Rights, is a one-page chart in which the first column lists the general type of expense, and the second column lists the amount spent. Plaintiffs' counsel has provided no further evidence supporting its claim that these costs were reasonable or necessary, or even that these costs were incurred in relation to this litigation. Accordingly, the Court declines to award these unsupported claims for costs totaling $1,431.39.

Accordingly, the Court finds that the remainder of these requested costs, in the amount of $2,661.00, are reasonable and necessary, and should be awarded as part of the instant Motion. The Court further finds that the evidence submitted in the Supplemental Rubin Declaration filed on October 30, 2006 (as Exhibit A) properly identifies those expenses of the Lawyers' Committee which are related to the instant litigation. This document, entitled "Redondo Beach Day Laborer, Cost Recap, 1/1/2005 - 10/20/06," is a list of costs totaling $2,142.51 for postage/delivery, telephone/electronic communication, travel, and meetings sponsored. These costs are:

| Counsel | Expense | Amount |
|---|---|---|
| Lawyers' Committee for Civil Rights (LCCR) | Postage & Delivery | $   110.95 |
| LCCR | Telephone & Electronic Communications | $    37.20 |
| LCCR | Travel | $1,969.36 |

| LCCR | Meetings Sponsored | $   25.00 |
| | **Total** | **$2,142.51** |

The Rubin Supplemental Declaration includes an itemized listing of each of these expenses, including a description of the expense along with the amount of the expense.  Upon review of the Declaration, the Court finds these costs, in the amount of $2,142.51, are reasonable and necessary, and should be awarded as part of the instant Motion.

Finally, Exhibit C to the Padilla Supplemental Declaration (filed on October 30, 2006) is a list of costs allegedly expended by Morrison & Foerster in this litigation since November 2004.  The list, entitled "Recap of Costs From Nov. 2004 Thru Present on 85357-1," references a different matter number (85357-1) than the matter number which is referenced in all of counsel's other billing records from Morrison & Foerster (85541).  Counsel has provided no further evidence supporting its claim that these costs were incurred in relation to this litigation. Accordingly, the Court declines to award these unsupported claims for costs totaling $966.29.

The Court hereby **GRANTS** Plaintiffs' request for costs in the reduced amount of $4,803.51.

## III.  Defendant's Objection to Plaintiffs' Supplemental Request for Fees

Plaintiffs filed a supplemental request for fees on October 30, 2006. Defendant City of Redondo Beach objects to Plaintiffs' supplemental request for fees on the grounds that the request was not properly noticed as a motion, and that

1  Plaintiffs failed to meet and confer regarding the additional attorneys' fees as per

2  Local Rule 7-3.  The Court finds that the supplemental request is not a separate

3  motion, and therefore, is not subject to the requirements of Rule 7-3.  The

4
5  supplemental request is appropriately before this Court, and the fees requested

6  therein have been included in the Court's calculation of the lodestar.  Defendant's

7  objection is **OVERRULED**.

8                                        **CONCLUSION**

9        For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for

10
11  Attorneys' Fees in the reduced amount of $203,759.15, and **GRANTS** Plaintiffs'

12  Motion for Costs in the amount of $4,803.51, for a sum total of $208,562.66.

13

14  IT IS SO ORDERED.
15  DATE:  December  12 , 2006
16                                        CONSUELO B. MARSHALL
                                          UNITED STATES DISTRICT JUDGE
17

18

19

20

21

22

23

24

25

26

27

28